UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

GUILLERMINA COELLO; JOSE
VALSECA, PPA GUILLERMINA COELLO;
AND JACK VALSECA, PPA
GUILLERMINA COELLO,

        Plaintiffs,
 v.

CONAGRA FOODS, INC.,

        Defendant.

Civil Action No.
3:15 - CV - 83 (CSH)


FEBRUARY 6, 2015

**ORDER**

**HAIGHT**, **Senior District Judge;**

### I. INTRODUCTION

Plaintiff Guillermina Coello brings this product liability action, on her own behalf and as guardian for her two minor sons, Jose Valseca and Jack Valseca, seeking monetary damages from Defendant ConAgra Foods, Incorporated ("ConAgra") for injuries she allegedly sustained as the result of a kitchen fire on October 16, 2014, in a residence in West Haven, Connecticut. Plaintiff asserts that the fire "was caused by a PAM cooking spray canister designed, labeled, manufactured, filled and/or sold by the Defendant." Doc. 1, ¶ 1. She thus claims that Defendant is "liable to [her] for her injuries and damages pursuant to the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572n, *et seq.*[1] *Id.*, ¶ 27. Moreover, she brings two claims for common law "bystander

---

[1] According to Plaintiff's allegations, she suffered the following physical injuries, "some or all of which may be permanent in nature":

1

emotional distress," one claim on behalf of each of her minor sons "PPA," "*per prochien ami*," or "as next friend and guardian."[2] Finally, Plaintiff asserts a claim for violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b, *et seq.*, alleging that Defendant knowingly sold and marketed the unsafe PAM cooking spray, which was "prone to venting and spraying its highly flammable contents near a gas cooking flame," thereby "producing catastrophic fires." *Id.*, ¶¶ 29-30.  Plaintiff alleges that Defendant "hid this defect from the public . . . in order to maximize profits and gain an unfair commercial advantage over its competitors." *Id.*, ¶ 30.

In Part II. of her Complaint, captioned "Jurisdiction," Plaintiff states that this Court has subject matter jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States").[3]  As set forth below, however, Plaintiff has failed to provide sufficient facts to

---

      a.      First, Second and Third Degree burns to her face, chest, right arm,
             right hand, right leg, and right foot;
      b.      Skin grafting;
      c.      Scarring;
      d.      Physical pain and suffering;
      e.      Emotional distress.

Doc. 1, Part III. ("Claims for Relief), ¶ 14.  She has also allegedly incurred medical expenses, which "will continue," and suffered a loss of earning capacity. *Id.*, ¶¶ 15-16. In addition, Plaintiff alleges that she has had her "ability to carry on and enjoy life's activities" impaired. *Id.*, ¶ 17.

[2]  The French phrase "per prochien ami," or "next friend" indicates one acting in a suit at law for one who is not *sui juris*, such as a minor. For a general definition of this legal phrase, *see, e.g.,* http://www.merriam-webster.com/dictionary/prochein%20ami.

[3] In addition to 28 U.S.C. § 1332(a), Plaintiff cites 28 U.S.C. § 1367 as statutory authority for jurisdiction.  That statutory section states, in relevant part:

[I]n any civil action of which the district courts have original jurisdiction, the district

establish that such diversity of citizenship exists. The Court will thus direct the parties to submit affidavits to confirm their citizenship as of the date this action commenced.

## II. DISCUSSION

A federal court must determine with certainty whether it has subject matter jurisdiction over a case pending before it. If necessary, the court has an obligation to consider its subject matter jurisdiction *sua sponte*. *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."), *cert. denied*, 549 U.S. 1282 (2007); *see also Univ. of South Alabama v. American Tobacco* Co., 168 F.3d 405, 410 (11th Cir. 1999) ("a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"). The court must "review a plaintiff's complaint at the earliest opportunity to determine whether [there is in fact] subject matter jurisdiction." *Licari v. Nutmeg Ins. Adjusters, Inc.*, No. 3:08mc245(WIG), 2008 WL 3891734, at * 1 (D. Conn. July 31, 2008) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107-08 (2d Cir. 1997) (holding that district court may raise issue of subject matter jurisdiction *sua sponte* at any time)).

In general, if subject matter jurisdiction is lacking, the action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the

---

courts shall have supplemental jurisdiction over all other claims that are so related
to claims in the action within such original jurisdiction that they form part of the
same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Because such "supplemental jurisdiction" may only be exercised when the district court has "original jurisdiction," it provides no independent basis for subject matter jurisdiction.

court must dismiss the action."). *See also Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir. 1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory.").

In the case at bar, the only potential premise for subject matter jurisdiction presented is diversity of citizenship, 28 U.S.C. § 1332(a),[4] "which requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.,*, 772 F.3d 111, 118 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). *See also St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)) . Moreover, "[i]n an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002). *See also McEachron v. Glans*, 983 F.Supp. 330, 333 (N.D.N.Y. 1997) ("Section 1332 mandates that diversity exists at the time the action is commenced.") (citing *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir.1991) and collecting cases).

### A.    **Plaintiff's Citizenship**

In order to establish diversity of citizenship, Plaintiff must demonstrate her state of

---

[4]    Because Plaintiff's Complaint alleges no facts or circumstances that potentially give rise to a federal claim under the Constitution or federal statute, no alternative "federal question" subject matter jurisdiction may be found under 28 U.S.C. § 1331.

citizenship in two capacities: (1) as an individual plaintiff and (2) as the guardian or "PPA," next friend, of her each of minor sons, Jose Valseca and Jack Valseca.

First, with respect to Plaintiff's citizenship as an individual, it is "well-established that allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-03 (2d Cir. 1997) (citing *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)). This is because an individual's citizenship for diversity purposes is determined by his or her *domicile*, not residence. *See Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). *See also John Birch Soc. v. Nat'l Broadcasting Co.*, 377 F.2d 194, 199 (2d Cir. 1967) ("it has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens").

"In general, the domicile of an individual is his true, fixed and permanent home and place of habitation" – *i.e,* "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983). *See also Dukes ex rel. Dukes v. New York City Emps.' Ret. Sys., and Bd. of Trs.,* 581 F. App'x 81, 82 (2d Cir. 2014) ("To determine domicile, courts examine physical presence and intent to remain in that place indefinitely."); *Palazzo*, 232 F.3d at 42; 13B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3612, at 526 (2d ed. 1984). Although an individual may have several residences, he or she can have only one domicile.[5] *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

Second, regarding the Plaintiff's citizenship as plaintiff guardian or "next friend" of her two minor sons, 28 U.S.C. § 1332(c)(2) dictates that "[f]or purposes of this section," governing

---

[5] The United States Supreme Court has described "residency" as occurring "when a person takes up his abode in a given place, without any present intention to remove therefrom." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983).

citizenship for diversity purposes, "the legal representative of an infant . . . shall be deemed to be a citizen only of the same State as the infant."  28 U.S.C. § 1332(c)(2).  The Court must therefore determine the citizenship of the two minors at issue.  *See, e.g., Rick v. Women's and Children's Hosp.*, No. 08–2013, 2010 WL 2360703, at *3 (W.D. La. May 10, 2010) (dismissing action for lack of subject matter jurisdiction because child was "stateless" for diversity purposes and child's "citizenship is the determining factor as that citizenship is what her parents are deemed to have as her representative under 28 U.S.C. § 1332 (c)(2)"); *see also Last v. Elwyn, Inc.*, 935 F.Supp. 594, 596 (E.D.Pa. 1996) ("In diversity cases, the diversity of the parties is based on citizenship of the ward, not the guardian.") (citing 28 U.S.C.A. § 1332(c)(2)).[6]

"The domicile of a minor is generally determined by reference to another person because minors are legally incapable of forming the requisite intent to regard a place as home . . ." *Clyde by Clyde v. Ludwig Hardware Store, Inc.*, 815 F.Supp. 688, 690 (S.D.N.Y. 1993) (citations omitted). "At birth, a child takes the domicile of the father unless the father is dead or the child is illegitimate, in which case the mother's domicile is determinative." 13E Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure Juris.* § 3615 (3d ed. 2008)(Westlaw update Sept. 2014) (footnote omitted).  *See Mississippi Band of Choctaw Indians,* 490 U.S. at 48 ("Since most minors are legally incapable of forming the requisite intent to establish a domicile, their

---

[6] Quoting the official commentary on § 1332(c)(2), the district court in *Last* noted:

> Whether the representative is one appointed only for litigation (a guardian 'ad litem') or one of a more permanent nature, suit by or against that representative in behalf of the infant or incompetent requires the court to consider the citizenship of the ward, not the citizenship of the representative.

935 F.Supp. at 596.

domicile is determined by that of their parents. In the case of an illegitimate child, that has traditionally meant the domicile of its mother") (citations omitted); *Delaware, L. & W.R. Co. v. Petrowsky*, 250 F. 554, 558 (2d Cir. 1918) ("The law is well established that every person at his birth acquires a domicile of origin which is that of the person on whom he is legally dependent, which in the case of a legitimate child is that of its father, and in the case of an illegitimate child is that of its mother."), *cert. denied*, 248 U.S. 573 (1918).

If the minor's parents were married at the child's birth but thereafter separate or divorce or the father dies, custody may pass to the mother, at which point her domicile becomes controlling. 13E Wright, Miller & Cooper, *Fed. Prac. & Proc. Juris.* § 3615.  *See also Clyde by Clyde,* 815 F. Supp. at 690-91 (under joint custody arrangement, child's citizenship was based on "primary" domicile as determined by factors such as sleeping time, pre-school enrollment, and location of pediatrician's office) (citing 13B Wright, Miller & Cooper, *Fed. Prac. & Proc.* § 559 (2d ed. 1992)).

In the case at bar, Plaintiff has provided scant information regarding her citizenship as an individual or as a guardian.  In fact, the Complaint reveals that Plaintiff has failed to plead the citizenship of any of the parties in sufficient detail for purposes of diversity.  In Part II., captioned "Jurisdiction," she simply states in a conclusory manner  that "Plaintiff and defendant are citizens of different states and the amount in controversy on each claim exceeds $75,000.00, exclusive of interests and costs."  With respect to her own citizenship, as an individual, she sets forth no facts regarding her domicile. She simply mentions in the "Introduction" to her Complaint, Part I., that the kitchen fire at issue occurred in "the home located at 79 East Avenue, 2nd  Floor, West Haven, Connecticut." Doc. 1, Part I., para. 2; *see also id.*, Part III. ("Claims for Relief"), ¶ 1 ("On October 16, 2014, . . ., the Plaintiff, Guillermina Coello, was in the kitchen of *the  residence* located at 79

East Avenue, 2nd Floor, West Haven, Connecticut.") (emphasis added).  In describing the location of the fire as "the home" and "the residence," Plaintiff fails to indicate whether the home or residence was *her domicile* or merely *the location of the fire.*

Moreover, even were Plaintiff to aver that the home in West Haven, Connecticut, was her residence at the time of the fire, such allegations of residency would be insufficient to establish her state of citizenship.  *Canedy,* 126 F.3d at 102-03.  Rather, she must establish her *domicile* and do as of the commencement date of the action. *Universal Licensing Corp.*, 293 F.3d at 581.  *See also McEachron*, 983 F.Supp. at 333.

With respect to her citizenship as the guardian of her two minor sons, Plaintiff has provided no facts regarding their domicile(s) and thus citizenship.  She does not specify the identity of either boy's father and/or whether she married any such father.  She fails to indicate whether either boy has a father who is living and/or whether she has separate custody of these two minors.  For example, if she is married and the sons are her husband's children, the domicile of their father may be determinative. If she is divorced or legally separated from their father and has physical custody (so that the boys live with her), her domicile may be controlling.  If Plaintiff was single at the births of the boys, so that the boys were born out of wedlock, her domicile may control.[7]  Moreover, if there is any question as to whether the boys are domiciled with her or another, she must show relevant facts regarding their states of citizenship (*i.e.*, location of their permanent home(s)).  In sum, the Court must have sufficient facts to determine the domiciles of the two minors to make a finding as to Plaintiff's citizenship as the guardian of each minor at the commencement of this action.

---

[7] *See generally* 32A Am. Jur. 2d Federal Courts § 683 ("in the case of a child born out-of-wedlock, it is [the domicile] of the mother [that controls,]" since she is the "natural guardian" of the child).

### B. Defendant's Citizenship

Plaintiff has failed to plead all necessary facts to establish the citizenship of corporate Defendant ConAgra. With respect to ConAgra, Plaintiff alleges that ConAgra "is a corporation with a principal place of business at One ConAgra Drive in Omaha, Nebraska." Doc. 1, Part III., ¶ 4. She also specifies that "ConAgra is licensed to do business and does business in the State of Connecticut." *Id.*, ¶ 5. Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Therefore, in addition to ConAgra's principal place of business (*i.e.*, Nebraska), the Court must be informed of any and *all* states by which ConAgra has been incorporated. If Connecticut is indeed ConAgra's only state of incorporation, it is a citizen of Connecticut and Nebraska. However, the Court must be informed of *all* of Defendant's states of incorporation as of the date the action was filed. Only then can it determine with certainty whether subject matter jurisdiction exists.

Furthermore, if ConAgra is a citizen of Connecticut (due to its state of incorporation) and Plaintiff is also a citizen of Connecticut, in either her individual or guardian capacity, there is no diversity of citizenship and thus no subject matter jurisdiction.

### C. Amount in Controversy

Finally, notwithstanding whether the citizenship of the parties can be demonstrated to be diverse, the amount in controversy must exceed $75,000, "exclusive of interest and costs." 28 U.S.C. § 1332(a). To invoke the jurisdiction of a federal court, one "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."

9

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994).

As to the requisite jurisdictional amount in controversy of $75,000, 28 U.S.C. § 1332(a), Plaintiff pleads well in excess of that amount in damages. In her "Prayer for Relief," Doc. 1, Part IV., in addition to costs, Plaintiff requests compensatory damages "in the amount of $10,000,000.00 (ten million) dollars" for herself and compensatory damages for her sons "in the amount of $ 1,000,000 (one million)" for each son – that is, a total of $12,000,000.00 (twelve million dollars) in compensatory damages, plus costs. *Id.*, ¶¶ 1-3.  She also seeks punitive damages under Conn. Gen. Stat. § 52-240b (captioned "Punitive damages in product liability actions") and "Double/Treble damages and attorney's fees" pursuant to CUTPA, Conn. Gen. Stat. § 42-110b.[8] *Id.*, Part IV., ¶¶ 4-5.

In general, the element of jurisdictional amount is presumed satisfied if it is specified in the complaint. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). *See also Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) ( affirming district court's conclusion that plaintiff could theoretically recover more than $75,000 in punitive damages, therefore meeting the statutory standard for amount in controversy.);

---

[8] In her Prayer for Relief, Part IV., ¶ 4, Plaintiff erroneously cites Conn. Gen. Stat. § 52-240(b), which pertains to the "[e]ffect of damages on costs," and specifically to actions in which "the title to property, or a right-of-way, or to the use of water, is in question, or if the damages were reduced so as not to exceed fifty dollars by reason of an act of the defendant pending the action" and, consequently, the plaintiff "recover[s] full costs."  The Court, however, construes Plaintiff's claim for relief as one under Conn. Gen. Stat. § 52-240b, regarding punitive damages in product liability actions.

Similarly, in her Prayer for Relief, Part IV., ¶ 5, Plaintiff erroneously cites Conn. Gen. Stat. § 42-110b (captioned "Unfair trade practices prohibited. Legislative intent.").  The Court finds that Plaintiff likely intended to cite  Conn.Gen. Stat. § 42-110g, which states that in a CUTPA action, "[t]he court may, in its discretion, *award punitive damages* and may provide such equitable relief as it deems necessary or proper." Conn.Gen. Stat. § 42-110g(a) (emphasis added).

*Pa. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 119 (noting that "the amount-in-controversy requirement is somewhat malleable," as opposed to the "absolute, bright-line prerequisite" of "complete diversity of all parties").  In a case of alleged grievous physical injuries, such as the case at bar, the Court finds that, absent proof to the contrary, Plaintiff has established the requisite amount in controversy.

### III. <u>CONCLUSION</u>

In order to determine whether it possesses subject matter jurisdiction in this action, the Court hereby ORDERS each party to establish, by affidavit , citizenship for diversity purposes as of the date this action was commenced, January 20, 2015.

Specifically, Plaintiff must file an Affidavit setting forth her state of citizenship as an individual, declaring:  (1) the state in which she was *domiciled* and principally established or her "true fixed home" and (2) the names, if any, of other states in which she had a  residence.  If there are additional states in which a residence was maintained, she must further provide: (a) the location of all such residences kept and (b) the approximate length of time spent at each residence.

Due to her position as plaintiff guardian of, or "next friend" to, each of her minor sons in this action, Plaintiff must establish her citizenship with respect to Jose Valseca and Jack Valseca by demonstrating their  individual domiciles (*i.e.*, citizenship). She must provide facts regarding the identity or  identities of the boys' father(s), whether she was married to the father of each boy at his birth, and whether she was married to said father on the date the action commenced.  If she  was divorced or separated, she must establish who had custody of each boy on January 20, 2015, and with whom each boy was  domiciled (*e.g.*, with her alone, with her husband or ex-husband, with another relative or legal guardian, *etc.*) on that date.

Defendant is ORDERED to file an Affidavit with the Court setting forth all relevant facts

regarding its citizenship as a corporation. Specifically, Defendant must list the name(s) of each state by which it was incorporated and the address of its principal place of business as of January 20, 2015.

The parties shall file and serve their affidavits regarding citizenship on or before **February 27, 2015.** All case deadlines are stayed pending the Court's review of the affidavits. If, upon review, the Court determines that it possesses subject matter jurisdiction, the action may proceed. Otherwise, in the absence of such jurisdiction, the Court shall dismiss the action without prejudice.

It is SO ORDERED.

Dated: New Haven, Connecticut
       February 6 , 2015

                                          */s/Charles S. Haight, Jr.*
                                          CHARLES S. HAIGHT, JR.
                                          Senior United States District Judge